# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| HEATHEN PESHEK,        ) | |
|            ) | |
|       Plaintiff,      ) | |
|     vs.               ) | Case No.: 2:10-cv-00812-GMN-RJJ |
|            ) | |
| LITTON LOAN SERVICING, et al.,    ) | **ORDER** |
|            ) | |
|      Defendants.     ) | |
| _____ ) | |

Plaintiff Heathen Peshek ("Peshek") has sued Defendants Litton Loan Servicing ("Litton"), Bank of America, N.A. ("Bank of America"), and National Default Service Corp. ("NDSC") on multiple causes of action related to the foreclosure and subsequent trustee sale of his home. Pending before the Court is Defendants Litton and Bank of America's Motion to Dismiss or, in the alternative, Motion for Summary Judgment. (Defs.' Mot. to Dismiss, ECF No. 14.) Additionally, Bank of America has filed an independent Motion to Dismiss or, in the alternative, Motion for Summary Judgment. (Def.'s Mot. to Dismiss, ECF No. 13.)

For the reasons set forth herein, Bank of America's Motion to Dismiss (ECF No. 13) will be granted in regard to all of Peshek's claims against Bank of America, though Peshek will be granted leave to amend all of his claims except his Breach of Contract (oral) cause of action. Additionally, Litton and Bank of America's joint Motion to Dismiss (ECF No. 14) will be granted, in part and denied, in part. The joint Motion to Dismiss will be denied as to Peshek's Fraud claim against Litton, but will be granted in regard to all other claims. However, Peshek will be given leave to amend all of his claims except his Breach of Contract

/ / /

/ / /

(oral) cause of action. The Motions for Summary Judgment will be denied without prejudice.

**I.     FACTS**

On January 9, 1998, Peshek purchased the property in dispute, 5301 Mountain View Dr., Las Vegas, NV 89146. (Pl. Compl. 3:8-9, ECF No. 1-2.) Peshek refinanced the property in 2006 by executing a first and second mortgage with Ames Funding Corporation ("Ames"), which is not a party to this action. (*Id*. at 3:21-22.) Peshek also executed a corresponding Deed of Trust for each mortgage. (Def.'s Mot. Dismiss 2:20-1, ECF No. 14.) The first mortgage and corresponding Deed of Trust were executed on March 17, 2006 in the amount of $201,750. (Def.'s Mot. Dismiss Ex. B. 6, ECF No. 13-1.) The second mortgage and corresponding Deed of Trust were executed on March 17, 2006, in the amount of $67,250. (Def.'s Mot. Dismiss Ex. C. 3, ECF No. 13-2.)

The Deeds of Trust list Ames as the lender and beneficiary, and Windsor Management Co. as the trustee. (Def.'s Mot. Dismiss Ex. B. 2, ECF 13-1; Ex. C. 2, ECF No. 13-2.) Litton became the loan servicing company at some point before July 2008. (Pl. Compl. 3:28, ECF No. 1-2.) On January 9, 2009, Litton filed a Substitution of Trustee Notice with the Clark County Recorder, naming NDSC as the new trustee. (Def.'s Mot. Dismiss Ex. F. 2, ECF No. 13-3.)

Peshek did not make his mortgage payments between September 1, 2008 and December 3, 2008. (Notice of Default Ex. D. 11-12, ECF No. 13-2.) NDSC, as the agent of Litton, sent a Notice of Default to Peshek on December 4, 2008. (*Id*. at 11-12.) The Notice of Default stated that Peshek was behind $8,297.41 on his payments. (*Id*.) Peshek continued to be in default between December 3, 2008, and March 5, 2009.

On March 5, 2009, NDSC sent a Notice of Trustee's Sale to Peshek; the sale was scheduled for March 26, 2009. (Def.'s Mot. Dismiss Ex. G. 4, ECF No. 13-3.) Peshek was subsequently notified of three changes to the date of the trustee sale. On June 26, 2009, NDSC

sent a second Notice of Trustee's Sale to Peshek; the sale was scheduled for July 21, 2009. (Def.'s Mot. Dismiss Ex. H. 9, ECF No. 13-3.) On October 19, 2009, NDSC sent a third Notice of Trustee's Sale to Peshek; the sale was scheduled for November 23, 2009. (Def.'s Mot. Dismiss Ex. I. 14, ECF No. 13-3.) On November 12, 2009, Peshek received verbal confirmation that Litton would again postpone the foreclosure sale to December 23, 2009. (Pl. Compl. 6:16-18, ECF No. 1-2.) Peshek's property was actually sold to Bank of America on January 26, 2010, for $99,000. (Def.'s Mot. Dismiss Ex. J. 19, ECF No. 13-3.) Peshek did not receive a written or verbal notice of the actual sale date. (Pl. Compl. 10:23-24, ECF No. 1-2.)

At some point before June 6, 2009, Peshek contacted Litton and requested a loan modification packet. (Pl. Compl. 4:22-23, ECF No. 1-2.) Peshek claims that Litton sent him a Modification Workout Plan ("Workout Plan") on or about June 6, 2009. (Pl. Compl. 4:22-23, ECF No. 1-2.) The Workout Plan provided for a trial period payment that must be remitted by the borrower. (Defs.' Mot. Dismiss Ex. D. 2, ECF No. 14-5.) That trial period payment was based on the income information that Peshek provided to Litton during their first telephone conversation concerning the possibility of modifying his loan. (*Id*.) It also represented an estimate of the amount the payment would be if Litton were able to complete the loan modification. (*Id*.)

On or about June 13, 2009, Peshek mailed the requested documentation back to Litton with the first trial period payment of $999.23. (Pl. Compl. 4:24-27, ECF No. 1-2.) On August 27, 2009, Peshek mailed the second trial period payment in the amount of $999.23, and this check was cashed by Litton. (*Id*. at 5:9-10.) On September 3, 2009, the check for the first trial period payment was returned to Peshek. (*Id*. at 4:28.) On September 28, 2009, Peshek sent the third trial payment in the amount of $999.23 to Litton. (*Id*. at 5:19-20.) Litton cashed the third payment. (*Id*.)

On October 26, 2009, Peshek received a phone call from Litton in which Litton

requested further financial documentation from Peshek's employer. (*Id*. at 6:8-11.) On October 27, 2009, Peshek faxed the requested financial documentation per Litton's request. (*Id*. at 6:12-13.) In a follow-up phone call Litton explained to Peshek that it would take eight months to complete the loan modification process. (*Id*. at 6:19-21.) On October 30, 2009, Peshek sent the fourth trial payment in the amount of $999.23, but this check was returned on November 15, 2009. (*Id*. at 6:22-24.) On November 9, 2009, Peshek received a letter from Litton stating that his loan modification was denied due to non-payment. (*Id*. at 6:25-26.)

On November 13, 2009, Litton's representative verbally told Peshek to resend an updated version of the required documents so that the loan modification process could start over. (Pl. Compl. 7:19-23, EFC No. 1-2.) From November 9, 2009 through December 2009, Peshek made many attempts to contact Litton to confirm the receipt of the updated documents. (*Id*. at 7:24-25.) Peshek contacted Litton on December 18, 2009, and was told by Litton's representative that the foreclosure sale date would be pushed back two months to February 28, 2010. (*Id*. at 8:2-3.) Peshek was again told to resend all loan modification documents, this time to reflect 2009 year-end figures. (*Id*. at 8:4-9.) On January 7, 2010, Peshek faxed all of the updated documents to Litton. (*Id*. at 8:11-12.)

On January 27, 2010, Peshek called Litton for a status update and received news that his property was in foreclosure. (*Id*. at 8:15-18.) Peshek then contacted NDSC, which explained that Peshek's property was in Real Estate Owned ("REO") status and that Litton would have to send a "letter of rescission" to NDSC so that his property could move back into Litton Loan Modification Department. (*Id*. at 8:18-21.) Peshek never received a letter of rescission.

## II.    PROCEDURAL HISTORY

Peshek originally filed this suit in the Eighth Judicial District Court of the State of Nevada in the County of Clark on March 22, 2010. (Defs.' Pet. for Removal 1:23-24, ECF No.

1). Defendants Litton and Bank of America subsequently removed the lawsuit to this District. (*Id.* at 1:20-26).

Litton and Bank of America then filed a joint 12(b)(6) motion or, in the alternative, a 56(a) motion in regard to Peshek's Complaint. (Defs.' Mot. Dismiss 1-16, ECF No. 14.) Additionally, Bank of America filed a separate 12(b)(6) Motion or, in the alternative, 56(a) Motion. (Def. Mot. Dismiss1-12, ECF No. 13.) Peshek filed a Response to Defendants' 12(b)(6)/56(a) Motions. (Pl. Resp. to Defs.' Mot. Dismiss 1-4, EFC No. 20.) The Response was due by October 18, 2010, pursuant to a Stipulation between Peshek and Defendants. (Pl. & Defs.' Stipulation 1, ECF No. 19.) However, the Response was not filed until October 19, 2010. (Pl. Resp. to Defs.' Mot. Dismiss 1, ECF No. 20.) Peshek also filed two untimely Affidavits in support of his Response on November 1, 2010. (Pl. Aff. in Supp. Resp. ECF Nos. 21 & 22.) Litton and Bank of America filed their joint Reply on November 8, 2010. (Defs.' Reply to Pl. Resp. 1, ECF No. 24.) Bank of America filed a separate Reply on November 8, 2010. (Def. Reply to Pl. Resp. 1, ECF No. 23.)

## III.    LEGAL STANDARDS

### A.    Pleading Standard

Fed. R. Civ. P. 8(a)(2) requires only "a short plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Weingartner v. Chase Home Finance*, 702 F. Supp. 2d 1276, 1284 (D. Nev. 2010) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, in regard to a pro se complaint the Supreme Court has stated, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

The Supreme Court recently clarified the Fed. R. Civ. P. 8(a)(2) standard in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). "A complaint attacked by a Rule 12(b)(6) motion to

dismiss does not need detailed factual allegations," however, the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Id*. at 555. Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal activity. *Id*. at 556.

## B.   Rule 12(b)(6) Standard

A Rule 12(b)(6) motion tests the legal sufficiency of a claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A court accepts as true all well-pleaded allegations of material fact and construes them in the light most favorable to the non-moving party. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). However, the court is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences. *Weingartner*, 702 F. Supp. 2d at 1285; *see Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

"Although generally the scope of review on a motion to dismiss for failure to state a claim is limited to the complaint, a court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion," without converting the motion to dismiss into a motion for summary judgment. *Daniels-Hall*, 629 F.3d at 998 (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)). "The court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Id*. Additionally, the court may take judicial notice of matters of public record. *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001).

If the 12(b)(6) motion prevails, the plaintiff can be given an opportunity to amend the complaint. "Fed. R. Civ. P. 15(a) provides that a trial court shall grant leave to amend freely

'when justice so requires.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). "In addition, . . . a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.*

**C.    Rule 9(b)**

FRCP 9(b) states, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (2007). "Rule 9(b) serves not only to give notice to defendants of the specific fraudulent conduct against which they must defend, but also to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect defendants from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1057 (9th Cir. 2011) (citing *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001)).

**D.    Rule 56(a)**

In addition to their Motion to Dismiss, Defendants have moved, in the alternative, for summary judgment. However, in his Response, Peshek requests time for additional discovery under Fed. R. Civ. P. 56(d) because he has not yet had an opportunity to conduct any discovery in this case. (Pl. Resp. 3:7-17, ECF No. 20.) As the Ninth Circuit explained, "[w]here a summary judgment motion is filed so early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any Rule 56(f)[1] motion fairly freely." *Burlington Northern Santa Fe R.R. Co. v. The Assiniboine and Sioux Tribes of The Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003). Furthermore, the Ninth Circuit stated: "[a]lthough Rule 56(f) facially gives judges the

---

[1] Fed. R. Civ. P. 56(f) was amended as of December 2010, and is now Fed. R. Civ. P. 56(d).

discretion to disallow discovery when the non-moving party cannot yet submit evidence supporting its opposition, the Supreme Court has restated the rule as requiring, rather than merely permitting, discovery 'where the non-moving party has not had the opportunity to discover information that is essential to its opposition.'" *Burlington Northern Santa Fe R.R. Co.*, 323 F.3d at 773 (citing *Anderson*, 477 U.S. at 250)

Because Peshek has not had any opportunity to conduct discovery and has requested additional time for discovery under Rule 56(d), Defendants' Motions for Summary Judgment will not be considered at this time and are therefore denied without prejudice.

## IV. ANALYSIS

### A. Standing

Defendants Bank of America and Litton argue that Peshek lacks standing to bring all of his claims, to wit: 1) Breach of Contract (written); 2) Breach of Contract (oral); 3) Breach of Implied Covenant of Good Faith and Fair Dealing; 4) Statutory Violations; 5) Setting Aside Foreclosure Sale and Declaratory Relief; 6) Unjust Enrichment; 7) Fraud; and 8) Specific Performance, because Peshek has not tendered the undisputed amount due. (Defs.' Mot. Dismiss 5, ECF No. 14.) Peshek contends that he does not lack standing because he attempted to tender the trial period payments of $999.23. (Pl. Aff. Supp. Resp. 1:21-22, ECF No. 22.)

The "tender rule" has been applied in the District of Nevada. *Roybal v. Countrywide Home Loans, Inc.* explained that "although this has not been explicitly addressed by the Nevada Supreme Court, a widely accepted rule in such [foreclosure] actions is that the party must tender the undisputed amount due and owing to challenge the validity of a sale or title to the property." *Roybal v. Countrywide Home Loans, Inc.*, No. 2:10-cv-750-ECR-PAL, 2010 WL 5136013, at *2 (D. Nev. Dec. 9, 2010) (citing *Abdallah v. United Sav. Bank*, 43 Cal. App. 4th 1101, 1109 (Cal. Ct. App. 1st 1996)). The main principle underlying these decisions is that he who seeks equity must do equity. *See McQuiddy v. Ware*, 87 U.S. 14, 19 (1873).

The Nevada Supreme Court has stated a rule similar to that of *Roybal*, explaining that "[a]n action for the tort of wrongful foreclosure will lie if the trustor or mortgagor can establish that at the time the power of sale was exercised or the foreclosure occurred, no breach of condition or failure of performance existed on the mortgagor's or trustor's part which would have authorized the foreclosure or exercise of the power of sale." *Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2d 610, 623 (Nev. 1983).

However, Defendants overstate the scope of the tender rule. The tender rule has only been applied in this District in the context of quiet title claims and the tort of wrongful foreclosure. *See, e.g., Simon v. Bank of America, N.A.*, No. 2:10-cv-00300-GMN-LRL, 2010 WL 2609436, at *12 (D. Nev. June 23, 2010); *Roybal*, 2010 WL 5136013 at *2. In the instant case, Peshek has not stated a cause of action for either the tort of wrongful foreclosure or quiet title. Thus, Defendants' attack on Peshek's standing to bring his claims is misplaced. The substance of each cause of action in Peshek's Complaint will be addressed below.

**B.      Breach of Written Contract (Loan Modification Agreement)**

Peshek claims that he entered into a legally binding contract with Litton, complete with offer, acceptance, and consideration, and that he fully performed all of his obligations under the Loan Modification Agreement. Peshek also claims that Litton breached the contract by denying the first payment and then denying the loan modification based upon that non-payment. Litton argues that no Loan Modification Agreement existed between Litton and Peshek; rather, Litton offered a "Workout Plan." Additionally, Litton claims that Peshek did not submit the required documents to accept the Workout Plan.

To prevail on a breach of contract claim, a plaintiff must demonstrate: (1) the existence of a valid contract; (2) a breach by the defendant; and (3) damages resulting from defendant's breach. *Shomer v. One West Bank, FBS*, No. 2:11–cv–00546–PMP–LRL, 2011 WL 2118879, at *2 (D. Nev. May 26, 2011) (citing *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-20

(D. Nev. 2006)); *Brown v. Kinross Gold U.S.A., Inc.*, 531 F. Supp. 2d 1234, 1240 (D. Nev. 2008). In Nevada, an enforceable contract requires an offer and acceptance, a meeting of the minds, and consideration. *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005); *see also* 17 Am. Jur. 2d *Contracts* § 19 (2011).

The facts of the breach of contract claim in *Hubel v. BAC Home Loans Servicing, LP* are similar to the instant case. *See Hubel v. BAC Home Loan Servicing, LP*, No. 2:10-CV-1476-JCM-LRL, 2010 WL 4983456, at *2 (D. Nev. Dec. 2, 2010). There, the plaintiffs (borrowers) claimed that an agreement for forbearance arose when they received documents from the lender and made payments of two amounts to the lender. *Id.* at *2. However, the defendant (lender) claimed that the only legally cognizable contract was the original loan. *Id.* at *2. Judge Mahan found that the plaintiff failed to articulate the existence of a valid contract that the defendant breached and dismissed the breach of contract claim.

In the instant case, Litton sent Peshek the Workout Plan[2], which constituted an offer made by Litton, as the Workout Plan, on its face, stated that it was an offer for Peshek to accept. (*Id.*) Therefore, Litton was the offeror and Peshek was the offeree. Peshek claimed that the offer was for a Loan Modification Agreement; however, the document itself illustrates that the offer was only for a Workout Plan. The "Frequently Asked Question" section of the Workout Plan states, "[p]lease let us know no later than 7/16/2009 that you accept this workout plan." (Defs.' Mot. Dismiss Ex. D. 3, ECF No. 14-5.) Additionally, the "Workout Plan" states:

/ / /

---

[2] The Court can take judicial notice of this document without converting the Motions to Dismiss into motions for summary judgment because a court may consider evidence on which the complaint "necessarily relies" if the complaint refers to the document, the document is central to the plaintiff's claim, and no party questions the authenticity of the copy attached to the 12(b)(6) motion. *Daniels-Hall*, 629 F.3d at 998. The Workout Plan satisfies the *Daniels-Hall* rule because the Complaint relies on facts contained in the Workout Plan, facts contained in the Workout Plan are central to the Plaintiff's claim for Breach of Contract (written), and neither the Plaintiff nor the Defendants have questioned the authenticity of the Workout Plan.

> I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan.

(Def. Mot. Dismiss Ex. D. 11, ECF No. 14-5.) Peshek does not plead facts that show he received a fully executed copy of a Modification Agreement or that the Modification Effective Date has passed.

In Peshek's Affidavit in support of his Response, he claims that Litton's cashing of his two $999.23 trial period payments is evidence of a contract. (Pl. Aff. Supp. Resp. 2:1-2, ECF No. 22.) However, this is insufficient to plead that Peshek effectively accepted Litton's offer such that a binding contract resulted. The Workout Plan notes, "What happens to my trial payments if I do not comply with the terms of the Workout Plan? Your trial period payments will be applied to your existing loan according to the terms of your loan documents." (Defs.' Mot. Dismiss, Ex. D. 6, ECF No. 14-5.) Thus, Litton unmistakably explains in its offer that the trial period payments can be applied to the current loan if the offeree does not fully comply with the Workout Plan. Consequently, Peshek has not pled the existence of a legally cognizable Loan Modification Agreement, let alone that Litton breached a Loan Modification Agreement.

Under Fed. R. Civ. P. 8(a)(2), Peshek has not stated a claim against Litton for the breach of a Loan Modification Agreement. Thus, Defendants' Motion to Dismiss will be granted with leave to amend. To the extent that this cause of action could be construed against Bank of America, it is also dismissed. Peshek has failed to meet the 8(a)(2) pleading standard with regard to Bank of America because only Litton is listed as a defendant with regard to this claim; Bank of America was never mentioned.

### C.   Breach of Oral Contract

Peshek claims that he entered into an oral contract to modify his home loan with Litton and that Litton breached the contract by failing to modify the loan and foreclosing on property. Litton argues that Peshek's breach of contract claim fails because of the statute of frauds.

Nev. Rev. Stat. § 111.205 states, "[n]o estate or interest in lands, other than for leases for a term not exceeding 1 year, . . . shall be created, granted, assigned, surrendered or declared after December 2, 1861, unless by act or operation of law, or by deed or conveyance, in writing . . . ." Thus, an oral agreement regarding real property is void and not final until put in writing. *Waters v. Weyerhaeuser Mortg. Co.*, 582 F.2d 503, 506 (9th Cir. 1978) (applying Nevada law Nev. Rev. Stat. §§111.205 & 111.210). "Modifications to deeds of trust or promissory notes are . . . subject to the statute of frauds." *Hampton v. Countrywide Home Loans, Inc.*, No. 2:10–cv–01775–RLH–GWF, 2011 WL 1792743, at *2 (D. Nev. May 11, 2011). Thus, Peshek claims the breach of a contract that does not actually exist. Defendants' Motion to Dismiss this claim will be granted without leave to amend.

To the extent that this cause of action could be construed against Bank of America, it is also dismissed. Peshek has failed to meet the 8(a)(2) pleading standard with regard to Bank of America because only Litton is listed as a defendant with regard to this claim; Bank of America was never mentioned.

### D.   Breach of Implied Covenant of Good Faith and Fair Dealing

Peshek claims that Litton made representations that it would honor the terms of the Loan Modification Agreement and oral agreement, that he relied on those representations, and that Litton breached the implied covenant of good faith and fair dealing by their actions, thereby disadvantaging Peshek. (Pl. Compl. 13:10-15, ECF No. 1-2.) Litton responds by stating that Peshek failed to adequately claim the existence of a contract between Litton and Peshek. (Defs.' Mot. Dismiss 10:7-8, ECF No. 14.) Next, Litton asserts that it exercised its

right to proceed with a nonjudicial foreclosure and that there is nothing in the Note or Deed of Trust that requires Litton to provide any special notice to Peshek regarding foreclosure merely because the lender is evaluating the borrower's request for loan modification. (*Id*. at 10:13-16.) Lastly, Litton asserts that there is no covenant of good faith and fair dealing between a bank and a borrower. (*Id*. at 11:1-3.)

The first element of breach of the implied covenant of good faith and fair dealing is "the plaintiff and defendant were parties to a contract." *Manderville v. Litton Loan Serv.*, No. 2:10-cv-1696-JCM-GWF, 2011 WL 2149105, at *2 (D. Nev. May 31, 2011) (citing *Hilton Hotels v. Butch Lewis Prods.*, 808 P.2d 919, 922 (Nev. 1991)); *see also Conley v. Wells Fargo*, No. 2:11-cv-141-JCM-LRL, 2011 WL 1675414, at *2 (D. Nev. May 3, 2011); *Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995).

Because Peshek's Complaint fails to sufficiently allege that a contractual relationship existed between himself and Litton, this claim also fails. Defendants' Motion to Dismiss this claim will therefore be granted, though Peshek will be granted leave to amend.

To the extent that this cause of action could be construed against Bank of America, it is also dismissed. Peshek has failed to meet the 8(a)(2) pleading standard with regard to Bank of America because only Litton is listed as a defendant with regard to this claim; Bank of America was never mentioned.

### E.      Statutory Violations (Wrongful Foreclosure)

Peshek claims that Defendants did not follow the proper statutorily-mandated procedures when they foreclosed on his home. Specifically, Peshek claims that Defendants failed to follow Nev. Rev. Stat. §§ 107.080(4)(a-d) & 107.082(1-2) by not providing notification of the actual action date to Peshek. (Pl. Compl. 13:25-89, 14:1-23, ECF No. 1-2.) Litton argues that Peshek's Statutory Violation claim fails because Litton provided notice in accordance with Nev. Rev. Stat. §§ 107.080(4)(a-d) & 107.082(1-2). Bank of America argues

that Peshek fails to state any defect in the foreclosure process with regard to Bank of America.

Bank of America also argues that Peshek generally fails to claim an actual defect in the

foreclosure process.

Nev. Rev. Stat. § 107.080(4) states:

4. The trustee, or other person authorized to make the sale under the terms of the trust deed or transfer in trust, shall, after expiration of the 3-month period following the recording the notice of breach and election to sell, and before the making of the sale, give notice of the time and place thereof by recording the notice of sale and by:

(a) Providing the notice to each trustor, any other person entitled to notice pursuant to this section and, if the property is operated as a facility licensed under chapter 449 of Nev. Rev. Stat., the State Board of Health, by personal service or by mailing the notice by registered or certified mail to the last known address of the trustor and any other person entitled to such notice pursuant to this section;

(b) Posting a similar notice particularly describing the property, for 20 days successively, in three public places of the township or city where the property is situated and where the property is to be sold;

(c) Publishing a copy of the notice three times, once each week for 3 consecutive weeks, in a newspaper of general circulation in the county where the property is situated; and

(d) If the property is a residential foreclosure complying with the provisions of Nev. Rev. Stat. 107.087.

Nev. Rev. Stat. § 107.080 allows a court to void a trustee sale if the person or entity that

conducted the sale did not substantially comply with the statute. *Hasan v. Ocwen Loan Serv.,*

*LLC*, No. 2:10-cv-00476-RLH, 2010 WL 2757971, at *3 (D. Nev. July 12, 2010). Pursuant to

Nev. Rev. Stat. 107.080(4), lenders must issue notice of the trustee sale by posting, publishing,

and mailing it to the property. *Id*. As another court in this District has explained, noticeably

absent from the statute is a requirement that lenders give *actual* notice to the borrower. *Id*.

(dismissing a wrongful foreclosure claim even through homeowner did not receive actual

notice of the trustee sale).

Peshek's sole claim in regard to Nev. Rev. Stat. § 107.080 is that he did not receive actual notice of the trustee sale of his property. However, on its face, Nev. Rev. Stat. § 107.080 does not state actual notice must be given to the owner of the property, nor have courts in this District read an actual notice requirement into the statute. *See, e.g.*, *Hasan*, 2010 WL 2757971, at *1. Therefore, Peshek has not pleaded sufficient facts to make it plausible that any Defendants failed to substantially comply with the statute.

Peshek also appears to be making a claim under Nev. Rev. Stat. § 107.082. This statute states: "1) If a sale of property pursuant to Nev. Rev. Stat. 107.080 is postponed by oral proclamation, the sale must be postponed to a later date at the same time and location; and 2) if such a sale has been postponed by oral proclamation three times, any new sale information must be provided by notice as provided in Nev. Rev. Stat. § 107.080." Nev. Rev. Stat. § 107.080(1-2) (2010). However, according to Peshek's own admission, there was only one verbal modification of the property sale date. (Pl. Compl. 6:16-18, ECF No. 1-2.). Thus, the sale cannot be in violation of Nev. Rev. Stat. § 107.082(2).

Peshek, however, also claims that Nev. Rev. Stat. § 107.082(1) was violated, alleging that the auction was not held at the same time and location as stated in the written Notice of the Trustee Sale. He specifically argues that no auction took place at all (Pl. Resp. 2:7, ECF No. 20.), writing in his Response that, "plaintiff alleges that there was never an actual auction." (Pl. Resp. 2:7, ECF No. 20.) Additionally Peshek writes, "[t]hey did not have a foreclosure sale. On the date that Defendant said this foreclosure took place at Nevada Legal News, they held no auction." (Pl. Aff. Supp. Resp. 2:12-14, ECF No. 22.) These two statements do not meet the pleading standard of *Twombly* because they do not raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. Peshek does not plead, for instance, that he went to the auction site and the auction did not take place, or that Nevada

Legal News stated that no auction took place on the date of the trustee sale, or that the purchaser acquired the property through some other means. The facts pled are simply conclusory statements of alleged wrongdoing, and, therefore, do not state a cause of action.

In regard to Bank of America, Peshek claims that no auction took place and that Bank of America benefited from a deficient foreclosure process. (Pl. Aff. Supp. Resp. 1:22-26, ECF No. 21.) It is unclear how this would constitute a statutory violation on the part of Bank of America. No further facts have been alleged against Bank of America in regard to this claim. Claims for relief must be more than conclusory statements, and Peshek has not alleged any facts that would raise this claim beyond the speculative level. *Twombly*, 550 U.S. at 555.

Accordingly, this cause of action will be dismissed with leave to amend.

### F.    Setting Aside Foreclosure Sale and Declaratory Relief

Peshek is asking for declaratory relief because of the alleged statutory violations. Peshek claims that all Defendants failed to properly notice and conduct the foreclosure sale in accordance with Nev. Rev. Stat. § 107.080(5) and 107.087. Defendants claim that Declaratory Relief is a request for relief, not a cause of action. Defendants are correct: Peshek's claim for Declaratory Relief does not create a substantive cause of action. *Manderville*, 2011 WL 21491105, at *2 (citing *Urbina v. Homeview Lending, Inc.*, 681 F. Supp. 2d 1254 (D. Nev. 2009)); *Stock West, Inc. v. Confederated Tribes of Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). Asking for declaratory relief is nothing more than requesting a remedy.

Because Peshek appears to be requesting declaratory relief based on the alleged statutory violations and because he has failed to state a viable claim as to those violations, his request for declaratory relief cannot be granted at this time.

### G.    Unjust Enrichment

Peshek claims that Litton was unjustly enriched when Bank of America paid $99,000 to Litton at the foreclosure sale. (Pl. Compl. 17:7-8, ECF No. 1-2.) Additionally, Peshek claims

that two payments, each for $999.23, were collected by Litton under false pretenses during the modification period. (Pl. Compl. 17:8-9, ECF No. 1-2.)

To set forth a claim for unjust enrichment, a plaintiff must allege that a defendant unjustly retained money or property of another against fundamental principles of equity. *Laughlin v. MidCountry Bank*, No. 3:10-cv-0294-LRH-VPC, 2011 WL 2174972, at *1-4 (D. Nev. June 3, 2011). However, an action for unjust enrichment cannot lie when there is an express written contract that governs the parties' relationships. *Id* (citing *LeasePartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975*, 942 P.2d 182, 187 (Nev. 1997)). Consequently, courts of this District have routinely held that a homeowner cannot bring a claim for unjust enrichment where a deed of trust and mortgage note already governs the relationship of the parties. *See, e.g.*, *Laughlin*, 2011 WL 2174972, at *4.

Here, Peshek signed a note and a deed of trust and defaulted on those documents. These express contracts explicitly govern the rights of the parties and allowed for the acceleration of the loan and sale of the property at a trustee's sale in the event of a default. Thus, Peshek cannot make a claim in equity for unjust enrichment. *Id*; s*ee also LeasePartners Corp.*, 942 P.2d at 187-88.

Peshek also claims that Litton accepted two payments, each for $999.23, under false pretenses. Although not specifically framed as a fraud claim in the Complaint, a claim that something was accepted or encouraged under false pretenses is dealt with under the Rule 9(b) heighten pleading standard. *See, e.g.*, *Josephson v. EMC Mortg. Corp.*, No. 2:10-cv-336-JCM-PAL, 2010 WL 4810715, at *2 (D. Nev. Nov. 19, 2010) (Plaintiffs claimed that their signature was obtained under false pretenses and the court dismissed the claim because plaintiffs' claim did not meet the heightened Rule 9(b) fraud pleading standards). "To satisfy Rule 9(b), a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is

false.'" *Cafasso*, 637 F.2d at 1055 (citing *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)). Peshek does not allege any additional facts regarding how Litton accepted the payments under false pretenses in his Response, nor does he raise any additional facts in his Affidavit in support of his Response. Accordingly, this claim fails to satisfy the heightened pleading standard for fraud.

In regard to Bank of America, the Complaint only states, "Defendant Litton was unjustly enriched by the total amounts of all money Defendant Bank of America paid to Defendant Litton." (Pl. Compl. 17:7-8, ECF No. 1-2.) This is a conclusory statement that fails to state any facts which raise the claim above a speculative level. *Twombly*, 550 U.S. at 555. Therefore, Peshek has not sufficiently alleged that Bank of America unjustly retained his money or property.

For the reasons stated above, and because Peshek failed to respond to any of Defendants' arguments in support of dismissing this claim[3], this claim will be dismissed with leave to amend.

### H.    Fraud

Peshek claims that Litton made false statements in regard to the loan modification process, that Litton knowingly made the false statements, and that he (Peshek) relied on those representations and was injured as a result. Litton claims that Peshek's fraud claim fails because it does not meet the heightened pleading requirement for fraud claims under FRCP 9(b).

Analogous to unjust enrichment claims, fraud is measured by the heightened pleading requirement of Rule 9(b). The elements necessary for a fraud claim have been established by the Nevada Supreme Court: 1) a false representation made by the defendant; 2) defendant's

---

[3] Local Rule 7-2(d) states, "[t]he failure of a moving party to file points and authorities in support of the motion shall constitute a consent to the denial of the motion. The failure of an opposing party to file points and authorities in response to any motion shall constitute a consent to the granting of the motion."

knowledge or belief that its representation was false; 3) defendant intended to induce plaintiff to act or refrain from acting upon the misrepresentation; and 4) damage to the plaintiff as a result of relying on the misrepresentation. *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1386 (Nev. 1998).

In his Complaint, Peshek claims that Litton's representatives made false statements that amount to fraud. Specifically, Peshek claims that on December 18, 2009, Debra Gomez (a Litton representative) said that the trustee sale date would be pushed back to February 28, 2010, and asked Peshek to send updated documents consisting of updated utility bills, bank statements, IRS Form 4506-t, hardship letter, and year-end earnings. His reliance on this statement is demonstrated by his actions: Peshek sent updated year-end financial documents to Litton on January 7, 2010. Peshek claims that Litton was aware that their statements were false at the time they were made. Lastly, Peshek claims that he has suffered damages as a result of Litton's misrepresentations: he did not get the benefit of the stated time period to take the steps necessary to avoid foreclosure, and that Debra Gomez's statement was false because Peshek's home was sold on January 26, 2010.

Analyzing the facts presented in the Complaint most favorably to Peshek, he has met Rule 9(b)'s pleading requirement as stated in *Cafasso*. Peshek has stated the who—Debra Gomez; what—knowingly provided incorrect date of Trustee Sale (February 28, 2010); when—December 19, 2009; where—over the telephone; and how—telephonically, as well as what was false or misleading—the date of the Trustee Sale; and why it was false—the sale actually took place on January 26, 2010.

These facts are stated in the narrative of the Complaint, not under the heading for the "Fraud" cause of action. (Pl. Compl. 17:19-28, 18:1-18, ECF No. 1-2.) However, the facts that lead to a proper claim of fraud are not so scattered that they "fail to give the defendants fair notice of a legally cognizable claim and the grounds on which it rests." *Weingartner*, 702 F.

Supp. 2d at 1284. Therefore, Defendants' Motion to Dismiss will be denied as to this claim for relief.

This cause of action does not allege any wrongdoing against Bank of America, let alone any fraud, and therefore fails to state a claim against Bank of America. Thus, to the extent that Peshek might now try to construe this cause of action against Bank of America, this claim is dismissed.

## I.   Specific Performance

Peshek is also requesting specific performance of the nonexistent loan modification agreement.  Specific performance is only available when: (1) the terms of the contract are definite and certain; (2) the remedy at law is inadequate; (3) the appellant has tendered performance; and (4) the court is willing to order it. *Serpa v. Darling*, 810 P.2d 778, 782 (Nev. 1991).  Further, "[t]o be awarded specific performance, a purchaser who has not tendered the purchase price must demonstrate that she is ready, willing, and able to perform." *Serpa*, 810 P.2d at 782.

Peshek did not sufficiently plead the existence of a loan modification contract, plead that all legal remedies are inadequate, or plead that he tendered or offered to tender the full amount of the debt owed. Furthermore, there are no reliable facts demonstrating that he is currently able to tender the entirety of the debt. Therefore, specific performance cannot be granted at this time.

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendant Bank of America's Motion to Dismiss (ECF No.13) is **GRANTED in regard to all of Peshek's claims against Bank of America**, **though Peshek is granted leave to amend all of his claims except his Breach of Contract (oral) cause of action.** That cause if action is **DISMISSED without leave to amend.**

**IT IS FURTHER ORDERED** that Defendants Litton and Bank of America's joint

Motion to Dismiss (ECF No. 14) is **GRANTED in part** and **DENIED in part**.  The Motion is **DENIED as to Peshek's Fraud claim against Defendant Litton**, but is **GRANTED** with regard to all other claims. However, **Peshek is hereby given leave to amend all of his claims except his Breach of Contract (oral) cause of action.** That cause of action is **DISMISSED without leave to amend.**

IT IS FURTHER ORDERED that, if Peshek chooses to amend his Complaint, that **Amended Complaint must be filed no later than October 18, 2011**.  **NO EXTENSIONS WILL BE GIVEN.**  If Peshek fails to submit an Amended Complaint by that date, all of his claims—except for his Fraud claim with regard to Defendant Litton—will be dismissed with prejudice.

DATED this 26th day of September, 2011.

_____
Gloria M. Navarro
United States District Judge